# Jane P. Roberts's Estate.   William L. Roberts's Appeal.

*Executors and administrators—Jurisdiction—Orphans' court—Costs on individual suit in another state—Distribution.*

Testatrix, a resident of Maryland, owned a farm in Pennsylvania which she directed her executor to sell. The executor, who was her son, sold the farm after the decease of testatrix, and subsequently one of his brothers brought suit against him individually in Maryland to recover a share of the proceeds. The court in Maryland decided that the suit could not be sustained in Maryland, and that the proceeds could be distributed only by the court in Pennsylvania having jurisdiction of the land sold. The executor filed his account in the orphans' court of the county where the land was situated, and claimed credit in his account for the costs and expenses to which he had been subjected by the suit in Maryland. *Held*, that the credit could not be allowed.

*Will—Debts due by legatees.*

Testatrix, a resident of Maryland, directed that a farm which she owned in Pennsylvania should be sold. She gave her husband one half interest in the proceeds for life, and the other half she gave to her children, with the direction that " if anyone owes us anything, take it out of their share, before giving it to them, and divide it among them all." The husband was present when the will was executed, and appended a written consent to its provisions. Testatrix knew that three of her sons owed money to the father at the time the will was executed. The husband died before testatrix, and the land was sold after his death. *Held*, that the debts due by the sons to their father should be deducted from the proceeds of the sale of the land.

Argued Jan. 29, 1894. Appeal, No. 271, Jan. T., 1893, by William L. Roberts and William L. Roberts, executor, from decree of O. C. Montgomery Co., in adjudication of decedent's estate. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed in part.

Exceptions to report of Henry D. Saylor, Esq., auditor.

The facts appear by the opinion of the Supreme Court.

The opinion of WEAND, J., was in part as follows :

" The auditor has deducted the amount (of the costs of the Maryland suit) from Edward's share upon the ground that Wm. L. in defending the suit was acting in the interests of the estate. Conceding the correctness of his conduct and his duty to defend and also the moral and legal obligation of Ed-

ward to pay the costs legally taxable in the case, we cannot admit that in this proceeding we have any right to take cognizance of the matter. We are sitting to distribute the fund under our laws and not to adjudicate matters of dispute between individuals. The estate was not a party to the controversy and it was a personal matter between the parties. Wm. L. Roberts could claim those costs from Edward if he had a judgment; he could attach his interest; but as a mere debtor he cannot ask the orphans' court of this county to interfere in his behalf. He was subjected to an unfounded suit, but this is a burden which executors often encounter without reimbursement for losses sustained thereby. Whether his victory benefited the estate is not a question now for us to decide. It resolves itself into one of jurisdiction and we are of opinion that we cannot support the auditor in his conclusions."

*Errors assigned* were (1–4) in permitting exceptions to be filed and acted upon after confirmation of account; (5) in refusing to allow costs of Maryland suit; (6, 7) in not deducting debts from shares of legatees; (8) in not allowing extra expenses to executors for defending Maryland suit.

*J. P. Hale Jenkins*, for appellant, cited, on fifth assignment: Evans's Ap., 155 Pa. 646.

*N. H. Larzelere* and *James R. Grier, John S. Freemann* with them, for appellees, cited, on construction of will: Act of June 4, 1879, P. L. 88; Wigram on Wills, 5th prop. § 59; Hilman v. Bonslaugh, 13 Pa. 352; Beltzhoover v. Costen, 7 Pa. 19; Mickley's Ap., 92 Pa. 514; Harper v. Blean, 3 Watts, 471.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894:

The domicile of Jane P. Roberts, the testatrix, at her death, was Harford county, Maryland. Besides some personal property, she was the owner of a farm of 52¼ acres in Abington township, Montgomery county. Her husband was William H. Roberts, who owned in his own right, some property in Maryland. They had six children: Charles W., Mary Jane, and Edward H., who lived in Maryland; Isaac L., William L., and

Ruth Ann, in Pennsylvania.   On the 28th of July, 1881, while her husband was living, she made her will, wherein, after dividing her personal effects among her children, she disposed of the farm :

" I desire my farm to be sold as soon as it can be sold to advantage after my death, that is, if it is not sold before.   But no one shall force a sale to get their share without the majority is willing for it, and one half the price I want to be secured in the farm while my dear husband lives, or if it is taken out, it must be secured in some other real estate, so as to keep the principal to be equally divided after my husband's death, among all my children.   My husband is to have the interest only while he lives.   The other half I want to be equally divided among my children, or if any of them is dead, their share is to be equally divided among their heirs.   If any one owes us anything, take it out of their share, before giving it to them, and divide it among them all."

She then appointed her husband and two sons, Charles W. and William L., executors.   The husband died in August, 1881 ; the testatrix partially administered on his estate, and survived him until October 2, 1883.   Letters testamentary were taken out by both executors in Maryland, but Charles W., being a non-resident, declined to file the bond required in Montgomery county, and William alone took out letters there.   In February, 1885, he sold the farm for $21,000, and for purpose of making a satisfactory title without proceeding in the orphans' court, a conveyance, joined in by all the legatees, was made to the purchaser.

However, the executor, William L., received the purchase money, and filed his second and final account of his administration in Montgomery county, September 3, 1887, which, after taking credit for payment of certain liens against the land discharged by the sale, and sundry other credits, showed a net balance for distribution of $11,613.   Henry D. Saylor, Esq., was appointed auditor to distribute.   On claim made by the executor, the auditor deducted from Edward's share, $850.12, the amount of certain costs and expenses incurred by William in a personal suit against him by Edward in the courts of Maryland, in which William was successful.   The allowance was made on the ground that, although the suit was against Wil-

liam, the fund in the hands of the executor would have been diminished by the amount of Edward's recovery, and, being a wholly unjust claim, as determined by final adjudication, Edward's share ought to be charged with the expense of his groundless litigation.

The executor also claimed, that at the date of the will, Albert, Charles and Edward were indebted to their father on personal obligations and as surety, for money, which the testatrix intended by her will should be deducted from their shares in the fund realized from the sale of the Montgomery county farm, and that these amounts should be charged against them respectively in the distribution. This claim was also sustained by the auditor. Other questions, involving less important items, were raised and passed on by the auditor, and eleven exceptions were filed to his report and argued before the court. After careful consideration the court passed on all of them by a decree overruling some and sustaining others. The action of the auditor in allowing the costs and expenses of the executor in the individual suit of Edward against him in Maryland, and in deducting from the shares of Albert, Charles and Edward the debts owing their father, was overruled, and a redistribution ordered. From the decree confirming this last report we have this appeal. There are eight assignments of error, only the 5th, 6th and 7th of which call for special notice.

The 5th complains of the decree in refusing the allowance of the expenses of the Maryland suit which ended in the judgment of the court of errors and appeals of that state against Edward and in favor of William.

We think the learned judge of the court below rightly held that the expenses incurred by William in this suit had no place in a distribution of the purchase money of the farm. It is true, indirectly the estate was benefited by the suit, for it was finally adjudged by the highest court of Maryland that the courts of that state had no jurisdiction to distribute this fund, and that the orphans' court of Montgomery county must make distribution ; see 17th Atlantic Reporter, 570. But the suit was not against William as executor. By attaching his land in Maryland, in a suit against him, William was compelled to defend. His defence established that Edward's claim against him individually had no foundation ; and, in so far as he had any claim,

it was as legatee under his mother's will, and that this could only be determined on a distribution of the purchase money of the farm in the orphans' court of Montgomery county.   Whatever costs William should recover are those incident to the judgment in his favor in Maryland, and must be collected under the laws of that state.   He avers he was put to an expense for traveling back and forth, counsel fees, etc., of $850.12, which Edward ought to pay him out of his share.   But there is no warrant for such an allowance.   It was his misfortune to have to defend against an unjust claim ; to successfully do so he incurred expense ; whatever is taxable in that suit follows the judgment in his favor.   The suit was not against him as executor, and he can, in this distribution, make no claim on the fund to even up matters between him and his brother as individuals.   This the learned judge of the court below has very clearly demonstrated.   But the 6th and 7th assignments seem to us better founded.

It will be noticed, the will was made the 28th of July, 1881. The husband and father was present when it was executed, for, by his writing appended to it, he consents to its provisions. The testatrix contemplated his survivorship, and says : "One half of the price I want to be secured in the farm while my dear husband lives," and then appointed him one of the executors.   Although he died the following month, and she survived nearly two years, their expectation as to life at the date of the will, as evinced by its terms, is to be considered in interpreting it.   She says, after providing a life interest in one half the purchase money of the farm for her husband, and making an equal distribution of the whole at his death : "If any one owes us anything, take it out of their share before giving it to them, and divide it among them all."   Albert, Charles and Edward were, at that time, indebted to their father.   The auditor finds as a fact that this indebtedness was well known to the mother when she executed the will in the presence of the father.   We think it quite clear that the testatrix meant by the expression, "if any one owes us anything, take it out of their share," any debts owing to either her or her husband by their children, and intended the father, as executor, to have the authority to deduct the debt from the share of the debtor in the purchase money of the farm.   The auditor finds further, as a fact, that, after the

mother's death, at a meeting of the heirs, this was the interpretation put upon the will by them, and that they then agreed the amounts owing by them to their father should be deducted from their share in this fund.    While such an agreement would not of itself have been sufficient to give the orphans' court jurisdiction to determine the indebtedness between the father and his three sons, nevertheless it is corroborative of the construction put by the auditor upon the will; indicates that those interested so understood the will.

The orphans' court, in thus interpreting the will, and determining the indebtedness of the sons to the father, does not usurp a jurisdiction belonging to the courts of Maryland; it only ascertains a fact necessary to the proper distribution of this fund under the will.    The court must determine how much "anyone owes us," the father and mother, before it can be taken "out of their share."    The legatees take their shares by the will with the condition attached, and can take them in no other right; the jurisdiction of the orphans' court to ascertain the amount owing the father, is just as clear as to ascertain any indebtedness to the mother.

The learned judge of the court below was of opinion the language of the testatrix was too vague to warrant this construction.    We think, in view of the whole will, the intent was manifest.    Therefore appellant's 6th and 7th assignments of error are sustained.    All the other assignments are overruled, and the record is remitted to the court below, that distribution may be made in accordance with this opinion; the costs to be paid by appellees.